1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   CINDI SUTTEY,                        )    No. CV-08-01436-PHX-GMS
                                         )
10              Plaintiff,               )    **ORDER**
                                         )
11  vs.                                  )
                                         )
12                                       )
    MICHAEL J. ASTRUE, Commissioner of   )
13  Social Security,                     )
                                         )
14              Defendant.               )
                                         )
15  _____   )

16

17          Pending before the Court are the Motion for Summary Judgment of Plaintiff Cindi

18  Suttey (Dkt. # 13) and the Cross-Motion for Summary Judgment of Defendant Michael J.

19  Astrue, Commissioner of Social Security (Dkt. # 17).  For the reasons set forth below, the

20  Court denies Plaintiff's motion and grants Defendant's cross-motion.

21                              **BACKGROUND**

22          On October 11, 2005, Plaintiff applied for disability insurance benefits and

23  supplemental security income, alleging a disability onset date of September 23, 2005.  (R.

24  at 47-55.)  Plaintiff's date last insured ("DLI") for disability insurance benefits, and thus the

25  date on or before which she must have been disabled, was June 30, 2007.  (*See* R. at 12.)

26  Plaintiff's claim was denied both initially and upon reconsideration.  (R. at 42-44, 513-16;

27  R. at 37-39, 508-11.)  Plaintiff then appealed to an Administrative Law Judge ("ALJ").  (R.

28  at 36.)  The ALJ conducted a hearing on the matter on December 3, 2007.  (R. at 521-53.)

1    In evaluating whether Plaintiff was disabled, the ALJ undertook the five-step

2    sequential evaluation for determining disability.[1]  (R. at 12-21.)  At step one, the ALJ

3    determined that Plaintiff had not engaged in substantial gainful activity.  (R. at 14.)  At step

4    two, the ALJ determined that Plaintiff suffered from the severe impairments of "degenerative

5    disc disease of the lumbar spine status post disckectomy [sic] and fusion in May 2007,

6    fibromyalgia, a history of hepatitis C under control, and a history of long-term marijuana use

7    in remission." (*Id.*)  At step three, the ALJ determined that none of these impairments, either

8    alone or in combination, met or equaled any of the Social Security Administration's listed

9    impairments.  (R. at 15.)

10    At step four, the ALJ made a determination of Plaintiff's residual functional capacity

11    ("RFC"),[2] concluding that Plaintiff could perform:

12

13    [1]The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520
14    (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental
     security income benefits).  Under the test:

15
16         A claimant must be found disabled if she proves: (1) that she is
          not presently engaged in a substantial gainful activity[,] (2) that
17         her disability is severe, and (3) that her impairment meets or
          equals one of the specific impairments described in the
18         regulations.  If the impairment does not meet or equal one of the
          specific impairments described in the regulations, the claimant
19         can still establish a prima facie case of disability by proving at
          step four that in addition to the first two requirements, she is not
20         able to perform any work that she has done in the past.  Once the
          claimant establishes a prima facie case, the burden of proof
21         shifts to the agency at step five to demonstrate that the claimant
          can perform a significant number of other jobs in the national
22         economy.  This step-five determination is made on the basis of
          four factors: the claimant's residual functional capacity, age,
23         work experience and education.
24

25    *Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007) (internal citations and quotations
26    omitted).

27    [2]RFC is the most a claimant can do despite the limitations caused by his impairments.
28    *See* S.S.R. 96-8p (July 2, 1996).

1
2
3

> light work . . . and is able to lift and/or carry 10 pounds frequently and 20 pounds occasionally, stand and walk at least 2 hours or 4-6 hours but less than six hours in an 8-hour day, sit 4-6 hours but less than 6 hours and needs a sit/stand option and alternate sitting and standing every 30 minutes.

4   (R. at 16.)  The ALJ thus determined that Plaintiff was unable to perform her past relevant

5   work as a cashier, janitor, or kennel technician.  (R. at 19.)  The ALJ therefore reached step

6   five, determining that Plaintiff could perform a significant number of other jobs in the

7   national economy that met her RFC limitations.  (R. at 20.)  Given this analysis, the ALJ

8   concluded that Plaintiff was not disabled.  (R. at 21.)

9        The Appeals Council declined to review the decision.  (R. at 3-5.)  Plaintiff filed the

10  complaint underlying this action on August 5, 2008, seeking this Court's review of the ALJ's

11  denial of benefits.[3]  (Dkt. # 1.)  Plaintiff filed her Motion for Summary Judgment on

12  November 21, 2008.  (Dkt. # 13.)  Defendant filed his Cross-Motion for Summary Judgment

13  on December 19, 2008.  (Dkt. # 17.)

14                                    **DISCUSSION**

15  **I.    Standard of Review**

16       A reviewing federal court will only address the issues raised by the claimant in the

17  appeal from the ALJ's decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

18  A federal court may set aside a denial of disability benefits only if that denial is either

19  unsupported by substantial evidence or based on legal error.  *Thomas v. Barnhart*, 278 F.3d

20  947, 954 (9th Cir. 2002).  Substantial evidence is "more than a scintilla but less than a

21  preponderance."  *Id.* (quotation omitted).  "Substantial evidence is relevant evidence which,

22  considering the record as a whole, a reasonable person might accept as adequate to support

23  a conclusion."  *Id.* (quotation omitted).

24

25

26       [3]Plaintiff was authorized to file this action by 42 U.S.C. § 405(g) (2004) ("Any
27  individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action
28  . . . .").

1   However, the ALJ is responsible for resolving conflicts in testimony, determining

2   credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.

3   1995). "When the evidence before the ALJ is subject to more than one rational

4   interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec.*

5   *Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the

6   reviewing court must resolve conflicts in evidence, and if the evidence can support either

7   outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*,

8   981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

9   **II.    Analysis**

10   Plaintiff argues that the ALJ erred by: (A) failing to list depression as a severe

11   impairment (Dkt. # 15 at 5), (B) rejecting the opinions of Ms. Strain and Mr. Giubardo (*id.*

12   at 6-7), (C) not finding a closed period of benefits (*id.* at 7-8), and (D) not discussing the

13   psychological review completed by the state agency's reviewing physician (*id.* at 9). The

14   Court will address each argument in turn.

15   **A.    Severity Determination**

16   Plaintiff first argues that the ALJ erred at step two of the five-step sequential

17   evaluation by failing to list depression as a severe impairment. (Dkt. # 15 at 5.) "[A]t the

18   second step of [the] sequential evaluation it must be determined whether medical evidence

19   establishes an impairment or combination of impairments 'of such severity' as to be the basis

20   of a finding of inability to engage in any [substantial gainful employment]." S.S.R. 85-28

21   (1985). A "severe" impairment is "any impairment or combination of impairments which

22   significantly limits [a claimant's] physical or mental ability to do basic work activities." 20

23   C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c). The "ability to do basic work activities," in

24   turn, is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §

25   404.1521(b); 20 C.F.R. § 416.921(b). "An impairment is not severe if it is merely 'a slight

26   abnormality (or combination of slight abnormalities) that has no more than a minimal effect

27   on the ability to do basic work activities." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir.

28   2005) (quoting S.S.R. 96-3p (July 2, 1996)).

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims," *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)), and "is to do no more than allow the [Social Security Administration] to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working," S.S.R. 85-28 (internal quotation omitted).  Therefore, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'"  *Webb*, 433 F.3d at 687 (quoting S.S.R. 85-28).  "'[I]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.'"  *Id.* (quoting S.S.R. 85-28).  Thus, the Court's task in reviewing a denial of benefits at step two is to "determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments."  *Id.*

In this case, the ALJ determined that Plaintiff's "medically determinable impairment of major depressive disorder in remission[] does not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and is therefore nonsevere."  (R. at 15.)  The ALJ first relied on the fact that Plaintiff had only mild limitation in performing her activities of daily living, as she is able to dress herself and take care of basic grooming and hygiene, she performs household chores such as cooking and washing dishes, and she can drive a vehicle, read, and go for walks.  (R. at 15; *see also* R. at 76-80, 85-92, 94-101, 407; *see, e.g.*, R. at 357, 363, 366, 373.)  Second, the ALJ examined Plaintiff's social functioning, again finding only mild limitation.  (R. at 15.)  The ALJ relied on evidence that Plaintiff has supportive familial interaction (she lives with her mother), is an active member of several community service associations, goes on dates, and travels.  (*Id.*; *see also* R. at 360, 363-64, 367, 372, 390, 396.)  Third, the ALJ concluded that Plaintiff experiences only mild disruption in concentration, persistence, and pace, being able to cook, read, use a computer for research and games, watch television, and drive.  (R. at 15; *see also* R. at 76-80,

85-92, 94-101.)  The ALJ also noted that Plaintiff's medications have been effective in treating her depression with no side effects.  (R. at 15; *see also* R. at 357, 360, 370, 372-73, 382-83, 390, 396, 402, 404, 414.)  Finally, the ALJ took stock of the absence of any episodes of decompensation.  (R. at 15.)  Because the ALJ found that any limitation in these areas was only mild (or nonexistent), the ALJ concluded that Plaintiff's depressive disorder was not severe.

The ALJ committed no legal error in making that conclusion.  *See* 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."); 20 C.F.R. § 416.920a(d)(1) (same).  Furthermore, substantial evidence in the record supports the ALJ's findings.  Based on the evidence cited, the ALJ could have reasonably concluded that the medical evidence clearly established that Plaintiff did not have a medically severe impairment or combination of impairments stemming from her depressive disorder.

Plaintiff disagrees, suggesting that the ALJ should have given greater weight to a letter from Plaintiff's therapist, dated December 28, 2007, indicating that Plaintiff's relatively-high Global Assessment of Functioning ("GAF")[4] scores should not preclude a finding of disability.  (Dkt. # 15 at 5 (citing R. at 507).)  However, the ALJ did not rely on the high GAF scores in its step two determination,[5] and Plaintiff has mounted no challenge to the evidence on which the ALJ did rely.  Furthermore, the letter merely provides that Plaintiff's GAF "will fall markedly" as a function of increasing life stressors, necessitating that she "remain medicated with psychotropic medications."  (R. at 507.)  As the ALJ

_____

[4]The GAF scale ranges from 1 to 100 and reflects a person's overall psychological, social, and occupational functioning.  *See Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed. 2000).

[5]Rather, the ALJ discussed Plaintiff's GAF scores in determining Plaintiff's residual functional capacity.  (R. at 17.)

- 6 -

1    explained, the record contains ample evidence that Plaintiff's medications have been

2    effective in treating her depression and have had no side effects.  (R. at 15; *see also* R. at

3    357, 360, 370, 372-73, 382-83, 390, 396, 402, 404, 414.)  Thus, any inference of severity that

4    might be drawn from the evidence Plaintiff cites would not undermine the reasonableness of

5    the ALJ's conclusion that the medical evidence as a whole clearly established that Plaintiff's

6    depression was not "severe."  The ALJ therefore did not err in this regard.[6]

7              **B.    Opinion Testimony**

8              Plaintiff next argues that the ALJ erred by assigning only minimal weight to the

9    opinions of Ms. Strain and Mr. Giubardo.  (Dkt. # 15 at 6-7.)  As an initial matter, the parties

10   disagree as to whether Ms. Strain (a physician assistant) and Mr. Giubardo (a case manager)

11   are "acceptable medical sources."  *See* 20 C.F.R. § 404.1513(a); 20 C.F.R. § 416.913(a).

12   "Acceptable medical sources" are "licensed physicians," "licensed or certified

13   psychologists," "licensed optometrists," "licensed podiatrists," and "qualified speech-

14   language pathologists."  *Id.*  Ms. Strain and Mr. Giubardo are none of these, and thus they

15   are not "acceptable medical sources."  *See, e.g.*, *Seltz v. Astrue*, No. 07-35570, 2008 WL

16   4833014, at *1 (9th Cir. Nov. 3, 2008) ("[A] physician's assistant's opinion, unlike the

17   opinion of a licensed physician, is not 'an acceptable medical source' for establishing a

18   medically determinable impairment."); *Yost v. Barnhart*, 79 F. App'x 553, 555 (4th Cir.

19   2003) (holding that a case manager is not an "acceptable medical source").  Thus, their

20   opinion testimony should be evaluated under the "other sources" section.  *See* 20 C.F.R. §

21

22

23

24

25              [6]Furthermore, even though the ALJ found Plaintiff's depression to be non-severe, he

26   nevertheless considered evidence of Plaintiff's depression in assessing her RFC (R. at 16-19),
     as he was required to do, *see* 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).

27   Plaintiff offers no argument as to how she was prejudiced given the fact that the ALJ did not

28   otherwise stop his analysis at step two.

1  404.1513(d); 20 C.F.R. § 416.913(d).[7]  Such evidence may be used "to show the severity of

2  [the claimant's] impairment(s) and how it affects [the claimant's] ability to work."  *Id.*

3           **1.      Ms. Strain**

4           Ms. Strain is a physician assistant at Desert Oasis Medical Center, and she apparently

5  completed a medical assessment of Plaintiff's ability to do work-related functions.[8]  (R. at

6  349-51.)  Ms. Strain opined that, in the course of an eight-hour workday, Plaintiff could sit

7  for one hour and stand or walk for one hour.  (R. at 349.)  Ms. Strain further stated that

8  Plaintiff can lift and carry up to five pounds frequently and up to ten pounds occasionally,

9  but never more than ten pounds.  (R. at 349-50.)  Ms. Strain also offered the opinion that

10  Plaintiff was somewhat limited in other ways, such as her fine motor control and ability to

11  bend, squat, crawl, and climb.  (R. at 350.)  Ms. Strain concluded that Plaintiff's limitations

12  were moderate to moderately severe.  (R. at 351.)

13         The ALJ assigned only minimal weight to Ms. Strain's opinion because it "does not

14  appear to be based on any objective tests or laboratory findings, but appears wholly based

15  on the claimant's subjective complaints, and was before the claimant's successful back

16  surgery."  (R. at 19.)  This is a legally proper reason to disregard opinion testimony, even

17  from an acceptable medical source.  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d

18  595, 602 (9th Cir. 1999) ("A physician's opinion of disability 'premised to a large extent

19

20

21         [7]Plaintiff points out that the ALJ did not reject these opinions because they are not
   acceptable medical sources (Dkt. # 20 at 1), apparently channeling the rule that a reviewing
22   court may only affirm the ALJ's rejection of evidence based on the facts and reasons
   articulated by the ALJ.  *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).
23   However, the fact that an opinion is not an "acceptable medical source" is *never* a reason to
   reject that opinion; it simply means that the opinion is treated as an "other source" to show
24   the severity of an impairment and how that impairment affects the claimant's ability to work.
   *See* 20 C.F.R. § 404.1513(a), (e); 20 C.F.R. § 416.913(a), (e).  The ALJ did not reject the
25   evidence here on such a basis, nor does the Court affirm on such a basis.  Thus, Plaintiff's
   argument is inapposite.
26

27         [8]The signature on the document in question is not legible, but the parties seem to agree
28   that it was completed by Ms. Strain.

- 8 -

1   upon the claimant's own accounts of his symptoms and limitations' may be disregarded

2   where those complaints have been 'properly discounted.'") (quoting *Fair v. Bowen*, 885 F.2d

3   597, 605 (9th Cir. 1989)).  In this case, Plaintiff mounts no objection to the ALJ's underlying

4   decision to reject Plaintiff's subjective complaint testimony.

5          Plaintiff does argue, somewhat baldly, that the ALJ is "obviously incorrect" and that

6   Plaintiff's medical problems were "definitely . . . part of the medical record and part of Ms.

7   Strain's awareness and consideration."  (Dkt. # 15 at 6.)  However, there is no indication in

8   the record that Ms. Strain based her assessment on any objective medical evidence.  Indeed,

9   there is evidence to the contrary, for the treatment notes completed by Ms. Strain do indeed

10  suggest that she was relying on Plaintiff's subjective complaints and not on any objective

11  medical evidence.  Ms. Strain noted that "all of the testing that I have done and Dr. Burhan

12  has done are basically negative" and that "this lady had illegitimate complaints.  She is

13  always in pain."  (R. at 333.)  This is supported by other treatment notes, which provide that

14  Ms. Strain "did labs and all were normal with the exception of sugar, which was just slightly

15  elevated."  (R. at 323.)  Ms. Strain elsewhere noted: "I have absolutely no correspondence

16  from anybody that I have sent her to for follow-up," and "I am in the dark.  I am not a 100%

17  [sic] sure what's going on."  (R. at 333.)  Another of Ms. Strain's treatment notes states that

18  a different doctor, Dr. Nayer, was "taking care of" other problems Plaintiff was experiencing.

19  (R. at 321; *see also* R. at 328.)  Ms. Strain later explains: "I have not heard anything.  I

20  known [sic] Dr. Nayer has done an MRI on her but again I have no information.  So I am not

21  sure where [Plaintiff] is."  (R. at 334.)  From all this evidence, the ALJ could have reasonably

22  concluded that Ms. Strain's opinion was based on Plaintiff's subjective complaints and not

23  on objective medical evidence.  Because Plaintiff mounts no challenge to the substance of

24  the ALJ's rejection of her subjective complaints, the Court finds no error in this regard.

25                          **2.     Mr. Giubardo**

26         Mr. Giubardo is Plaintiff's case manager at Mohave Mental Health Clinic, and he

27  completed a residual functional capacity questionnaire providing that Plaintiff suffers from

28  "marked," and even "extreme" limitations in functioning.  (R. at 354-55.)  On the section of

1  the questionnaire asking for the medical or clinical findings supporting the assessment, Mr.

2  Giubardo wrote only: "[Plaintiff] suffers from severe anxiety and major depression." (R. at

3  355.) The ALJ assigned minimal weight to Mr. Giubardo's opinion on two grounds: (1) it

4  was based only on subjective complaints, and (2) it was inconsistent with the other evidence

5  in the record. Specifically,

6        it does not appear to be based on any objective data or
      laboratory findings, but appears to be wholly based on

7        [Plaintiff's] subjective complaints. In addition, the explanation
      given by Mr. Giubardo in the December 28, 2007 letter that he

8        based his findings on the claimant's chronic pain and persistent
      depression and anxiety is contradicted by the fact that as of May

9        through at least October 2007, the depression was diagnosed as
      in remission. This finding is supported by numerous treatment

10        notes that consistently reported an effective treatment regimen
      with no side effects, good clinical signs and consistently high

11        GAF scale scores from Mr. Giubardo and other mental health
      providers. Other treatment notes show a reduction in the back

12        pain and the claimant has testified to effective treatment for the
      fibromyalgia as well.

13  (R. at 19.) Plaintiff objects to the weight the ALJ assigned to Mr. Giubardo's assessment,

14  arguing that "there are no laboratory findings to define depression." (Dkt. # 15 at 7.)

15  Plaintiff's argument fails for two reasons. First, Plaintiff does not challenge the ALJ's

16  rejection of Mr. Giubardo's opinion as being inconsistent with other evidence in the record

17  (and, as outlined by the ALJ, it is). By failing to challenge this basis for the ruling, the Court

18  need not rely on the ALJ's other rationale in affirming the denial of benefits.[9]

19        Second, even if Plaintiff's entirely unsupported statement about the nature of

20  depression were correct, the fact that depression is not diagnosed by laboratory findings does

21

22        [9]Plaintiff also states that the ALJ should have given "controlling weight" to Mr.

23  Giubardo's opinion. However, "only 'acceptable medical sources' can be considered treating

24  sources, whose medical opinions may be entitled to controlling weight." S.S.R. 06-03p
(Aug. 9, 2006) (citations omitted); *see, e.g.*, *Bowman v. Astrue*, 511 F.3d 1270, 1275 n.2

25  (10th Cir. 2008); *Tindell v. Barnhart*, 444 F.3d 1002, 1005 (8th Cir. 2006). Regardless, Mr.
Giubardo's testimony is inconsistent with substantial evidence in the record, none of which

26  Plaintiff has challenged. Thus, Mr. Giubardo's opinion would not be entitled to controlling

27  weight in any event. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007)
("[A] treating physician's opinion must be given controlling weight if it is well-supported

28  and not inconsistent with the other substantial evidence in the record.").

1   not mean that it cannot be supported by objective data.  The Ninth Circuit has affirmed an

2   ALJ's decision to disregard medical opinions about the effects of depression precisely

3   because the claimant's complaints did not comport with "objective testing."  *Morgan*, 169

4   F.3d at 598-99 (affirming the ALJ's denial of benefits where he "determined that clear

5   conflict existed between Morgan's statements regarding the severity of his depression as he

6   represented those symptoms and Morgan's behavior as observed under objective testing" and

7   "discounted, therefore, any medical findings based on Morgan's subjective complaints,

8   including the medical examiners' opinions regarding his ability to work").  Thus, the ALJ

9   did not err in relying on the reasoning that Mr. Giubardo's opinion was based on Plaintiff's

10  subjective complaints.  *See Morgan*, 169 F.3d at 602.

11          **C.     Benefit Period**

12          Plaintiff next argues that the ALJ erred by not at least finding a closed period of

13  benefits.  (Dkt. # 15 at 7-8.)  Plaintiff's basis for that argument is the ALJ's alternative

14  reasoning for rejecting Ms. Strain's opinion – that it was "before the successful back

15  surgery."  (R. at 19.)  Plaintiff infers that Ms. Strain's opinion therefore remained in force

16  as to the time before the back surgery, and thus that Plaintiff is entitled to a period of benefits

17  between the onset date and the date of the back surgery.  The Court need not decide the

18  reasonableness of Plaintiff's inferences.  Because the ALJ independently rejected Ms.

19  Strain's opinion as being based solely on Plaintiff's subjective complaints, and because the

20  Court, as explained above, finds no error in that conclusion, Ms. Strain's opinion cannot be

21  used to support even a closed period of benefits.  Therefore, reversal is not warranted.

22          **D.     Psychological Review**

23          Plaintiff's last argument is that the ALJ erred by not discussing the psychological

24  review completed by the state agency's reviewing physician.  (Dkt. # 15 at 9.)  However,

25  even if the ALJ erred by not discussing this one piece of evidence, such error would be

26  harmless.  *See Batson*, 359 F.3d at 1197 (explaining that an ALJ's error is harmless if it does

27  not affect his ultimate conclusion).  The reviewing physician only assessed Plaintiff as

28  having "mild" or "moderate" limitations, and none of Plaintiff's limitations were "marked"

1    (i.e., so limited as to satisfy the functional criterion).  (R. at 260.)  Moreover, the physician
2    specifically noted that any impairment would not meet the duration requirement for
3    disability. (R. at 250.)  Thus, even if there was error, such error would have been harmless.[10]
4    Reversal is therefore not appropriate.

5                                    **CONCLUSION**

6           The ALJ made no error of law and there is substantial evidence to support the ALJ's
7    denial of benefits.

8           **IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment
9    (Dkt. # 13) is **DENIED**.

10          **IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary
11   Judgment (Dkt. # 17) is **GRANTED**.

12          **IT IS FURTHER ORDERED** that the Clerk of the Court is directed to
13   **TERMINATE** this action.

14          DATED this 12th day of February, 2009.

15
16                                    _____
                                      G. Murray Snow
17                                    United States District Judge

18
19
20
21
22
23
24

25   _____
26   [10]To the extent Plaintiff is arguing that the ALJ failed to undertake the evaluation of
     mental impairments set out in 20 C.F.R. § 404.1520a and 20 C.F.R. § 416.920a, Plaintiff is
27   mistaken.  The ALJ did so and concluded that Plaintiff's mental impairments were not
     severe.  (R. at 15.)  As discussed above, the ALJ made no legal error in that regard and his
28   decision is supported by substantial evidence.

                                          - 12 -